[Cite as *State v. Rodriguez*, 2017-Ohio-9130.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-78 |
| | | (C.P.C. No. 15CR-2107) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Victor R. Rodriguez, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 19, 2017

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

**On brief**: *Jeremy A. Roth*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Victor R. Rodriguez, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following his entry of an "*Alford*"[1] plea of guilty to attempted gross sexual imposition.

{¶ 2} On April 28, 2015, appellant was indicted on one count of rape, in violation of R.C. 2907.02, and one count of sexual battery, in violation of R.C. 2907.03. Appellant entered a plea of not guilty, and the matter was set for trial before a jury.

{¶ 3} On November 29, 2016, the trial court conducted voir dire proceedings. On November 30, 2016, appellant appeared before the trial court and entered an *Alford* plea

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

of guilty to the stipulated lesser-included offense to count one, attempted gross sexual imposition, in violation of R.C 2907.05 and 2923.02.

{¶ 4} During the plea proceedings, the trial court inquired of defense counsel as to the "reasons for your client's *Alford* Plea." (Tr. Vol. I at 7.) In response, defense counsel stated:

> Your Honor. * * * We thought that there were some issues that were very triable in this case. I pointed out to [appellant] yesterday after voir dire was called up that I believe that there were several members of the jury who had been victims of potential sexual abuse, specifically, I want to say Juror No. 11 [and] Juror No. 18, * * * and then there was a juror that would have been one of the first people brought up had we excused those people who had sexual assault in their past. Those things gave me pause wherein the * * * Court was not going to get rid of them for cause then we would have to use three of our preemptory challenges on just those individuals. I explained those things to him, told him what the potential risks were if he were to potentially lose at trial. And once his offer was made known to me, I relayed it to him and told him although there are some downsides for him, specifically, the 15-year reporting requirement, that it does not carry mandatory prison time. There's a presumption of community control. And all of those things he should consider seriously. He spoke with his father this morning. And after those discussions, he told me that he would like to resolve the case in this fashion.

(Tr. Vol. I at 7-8.)

{¶ 5} The trial court then engaged in a plea colloquy with appellant. During the colloquy, the court addressed the issue of post-release control, stating in part as follows:

> What you also need to understand is that if I were to place you in prison for these offenses, once you're released from prison, you would be subject to what is called post-release control. What that means is the Adult Parole Authority would have supervision over you and they could place certain restrictions on what you can and cannot do. If you would violate the terms of your post-release control, the Adult Parole Authority could actually send you back to prison for a second time even though you would have done all the initial prison term in this case. Your period of supervision under post-release control would be for a maximum of three years. If you were to violate the terms of your post-release control and if you were to be

sent back to prison for a second time, that second sentence could be for up to half as long as your initial prison term.

(Tr. Vol. I at 10.)

{¶ 6}  During the plea proceedings, the prosecutor gave the following recitation of the facts giving rise to the indictment:

This case happened on August 30, 2014.  [A.C.] is the victim in this case.  She was celebrating her best friend [D.T.'s] birthday.  She went over to [D.T.'s] house. And they began drinking.  They then picked up a couple of other friends to go to a club.  * * * The defendant is the cousin to [D.T.]  And he went with them as well to the club.

There was some sort of argument at the club between the victim in the case and the defendant.  And some of the witnesses would say that the defendant was hitting on the victim at the club.

After they left the club, at that point, basically, the victim doesn't remember anything from that point forward until the next morning.  She just has a complete blank memory.  It's unclear whether someone put something in her drink or she just drank too much.  But either way, she doesn't remember anything.

But what we know from the other witnesses * * * is that they go back to [a friend's] house.  [A.C.] is very sick throwing up, so they put her in a bed at [the friend's] house.  They decide that they're going to go to an after-hours party, but the defendant stays behind. [D.T.] feels comfortable with that because the defendant is her cousin.  He's downstairs on the couch.  And [A.C.] is upstairs on the bed, basically, unconscious at this point.  When the girls come home from the after-hours club, they find the defendant in the bed with [A.C.]  She's still unconscious at this point.

She calls her boyfriend to pick her up. She just feels that something is not right.  She goes to the hospital and has a rape kit done.  They do several swabs which are sent to the lab for DNA testing.  There were skin swabs taken from her inner thigh that matched the DNA of the defendant.  Those were actually semen swabs.  There's an anal swab that matches in terms of YSTR, or male DNA, that is consistent with the Defendant; although, that statistic is much lower than the skin

swabs that were done, which is hits at every Loci for the DNA results.

The Defendant is interviewed and indicates to the detective that he did not have any sexual relations with the victim.

(Tr. Vol. I at 14-16.)

{¶ 7} The trial court, upon determining that appellant's plea was voluntary, accepted the guilty plea and found him guilty of attempted gross sexual imposition. The trial court ordered a pre-sentence investigation and set a sentencing hearing date.

{¶ 8} At the close of the plea hearing, the trial court addressed the fact there had been a "physical altercation" between appellant and "the boyfriend" of the complainant outside the courtroom that morning. A deputy sheriff indicated that she had heard yelling in the hallway and that, upon further investigation, observed the "boyfriend * * * standing outside the second set of doors," while appellant "was standing on this side of the first set of doors out there." The deputy sheriff further related: "They continued to yell. And then [appellant] walked up to him, took both hands and pushed on his chest and pushed him backwards." (Tr. Vol. I at 18.) Following that discussion, the trial court revoked appellant's bond.

{¶ 9} During a subsequent bond hearing, held January 3, 2017, the prosecutor noted that "[t]here has been a case filed in municipal court, * * * Case No. 2016-CRB-26969, for assault charges." The trial court indicated it was "not going to change the bond in this matter." (Tr. Vol. II at 4.)

{¶ 10} On January 13, 2017, the trial court conducted a sentencing hearing. During the hearing, the trial court addressed appellant and stated in part:

Mr. Rodriguez, I've considered the principles and purposes of sentencing in your case, as well as all the relevant sentencing factors. As this is a sex offense, there is no presumption one way or the other with respect to probation or prison. While I do note that this is your first felony offense, you do have multiple misdemeanor offenses. And you've been given the opportunity for probation on those. You're currently facing revocation in two of those cases from 2015. While you were on reporting bond in this case, you missed appointments and you picked up two new charges.

This is a serious offense. The details of the case are very concerning. It has had a traumatic impact on the victim in this case. And I note again that despite the fact that you had this case pending and you were on a reporting bond, you incurred charges in two new cases.

It is the Court's opinion that community control would undermine the severity of this case and your actions to date. So I'm going to sentence you to a term of incarceration in ODRC. It is going to be for a period of 11 months. I have a finding of 58 days of jail-time credit. Upon your release from prison, you will be subject to post-release control. It is for a mandatory five years. You are going to be required to register as a Tier 1 sex offender. That is going to be for a period of 15 years. We talked about the terms of that when you pled in this case. Also you have signed the registration form in this matter with respect to those terms. I'm going to waive any fine. I'm going to order that you pay the court costs, but I am going to defer those while you're incarcerated.

(Tr. Vol. III at 6-7.)

{¶ 11} The trial court sentenced appellant by judgment entry filed January 13, 2017, imposing a sentence of 11 months incarceration. The entry stated that appellant "was notified of post-release control" at the time of the plea, and the sentencing entry noted "a period of post-release control of 5 years."

{¶ 12} On appeal, appellant sets forth the following two assignments of error for this court's review:

[I.] The trial court erred when it accepted Appellant's guilty plea as it was not knowing and voluntary due to misstatements of law in violation of Ohio Criminal Rule 11 and of Ohio and the United States Constitutions.

[II.] The trial court erred when it stated that there was no presumption of community control for the charge of a fifth degree felony, and sentenced Appellant to an 11 month term of incarceration.

{¶ 13} Under the first assignment of error, appellant contends that his plea was not made knowingly and voluntarily due to misstatements of law made by the trial court during the plea hearing. Specifically, appellant argues the trial court informed him he would be subject to post-release control for a "maximum of three years" when, in fact, he

was subject to a mandatory five-year period of post-release control supervision. Appellant further notes the trial court, during the subsequent sentencing hearing, imposed the correct statutory period of post-release control (i.e., five years) as part of his sentence.

{¶ 14} Crim.R. 11(C)(2) states as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 15} In deciding whether to accept a guilty plea, a trial court "must determine whether the defendant knowingly, intelligently, and voluntarily entered the plea." *State v. Eckler,* 4th Dist. No. 09CA878, 2009-Ohio-7064, ¶ 48. In reviewing a trial court's acceptance of a guilty plea, a reviewing court " 'examines the totality of the circumstances through a *de novo* review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " *Id.*, quoting *State v. Jodziewicz*, 4th Dist. No. 98CA667 (Apr. 16, 1999). Further, "[a]n appellate court's review of a Crim.R. 11(C)(2) colloquy is contingent on whether the defendant complains of either a failure to inform him of a constitutional right or a failure to inform him of a non-constitutional right." *State v. Gaspareno,* 3d Dist. No. 9-15-15, 2016-Ohio-990, ¶ 50. While a trial court is

required to strictly comply with Crim.R. 11(C)(2) with respect to constitutional rights, "if the appeal concerns non-constitutional rights, then we review the colloquy to ensure that the trial court *substantially complied* with Crim.R. 11(C)(2)." (Emphasis sic.) *Id.*

{¶ 16} Thus, in instances where a trial judge has "imperfectly explained nonconstitutional rights such as the right to be informed of the maximum possible penalty and the effect of the plea, a substantial-compliance rule applies." *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 31. Under this rule, "a slight deviation from the text of the rule is permissible," and "so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *Id.,* quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 17} Further, "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Id.* at ¶ 32. If a trial judge "partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates prejudicial effect." *Id.* The test for prejudicial effect "is 'whether the plea would have otherwise been made.' " *Id.,* quoting *Nero* at 108.

{¶ 18} In response to appellant's claim that his plea was not knowingly and voluntarily entered, plaintiff-appellee, State of Ohio, argues the record indicates the trial court partially complied with Crim.R. 11, and that appellant cannot demonstrate the necessary prejudice to warrant reversal. In support, the state relies in part on *State v. Lang,* 8th Dist. No. 92099, 2010-Ohio-433, a case in which the reviewing court considered the effect of a trial court's failure to properly advise the appellant of post-release control (i.e., by misstating the applicable term of post-release control).

{¶ 19} In *Lang,* the trial court informed the appellant during the plea colloquy that, upon release, he "may be subject to what we call post release control, which is like parole for a period of up to three years." (Emphasis omitted.) *Id.* at ¶ 9. Under the facts in *Lang,* post-release control "was mandatory, not discretionary, and the term was five years." *Id.* at ¶ 10. On appeal, the appellant argued that his plea was not knowingly and

voluntarily entered due to the court's failure to accurately advise him concerning post-release control.

{¶ 20} The reviewing court observed there was "no dispute the trial court was mistaken in advising [the appellant] about postrelease control." *Id.* Further, the court determined that the trial court failed to substantially comply in failing to advise the appellant that he would be subject to five years of mandatory post-release control instead of three years. Nonetheless, noting that the trial court "partially complied" in advising the appellant of his rights, the court in *Lang* affirmed the trial court's acceptance of the guilty plea based on lack of prejudice to the appellant. *Id.* at ¶ 12. Specifically, in reviewing the record, the appellate court found "there was no discussion, question, or comment indicating that postrelease control was of particular concern or import to [the appellant]." *Id.* at ¶ 14. Rather, the court noted, the appellant was "apprised that if he went to trial and was found guilty on all counts, he could receive a potential sentence in excess of 30 years." *Id.* Thus, the court found that the "reduction in sentence that the plea offered may be viewed as the probable impetus for entering into the plea." *Id.*

{¶ 21} In the present case, the record indicates the trial court discussed post-release control with appellant but, similar to the facts in *Lang*, the court failed to inform him during the plea colloquy that he would be subject to a mandatory five-year term of post-release control. Thus, as in *Lang,* the record indicates the trial court partially complied with the non-constitutional requirements of Crim.R. 11. The dispositive issue, therefore, is whether appellant has demonstrated prejudice, i.e., whether the plea would have otherwise been made. *Clark* at ¶ 32.

{¶ 22} Based on a review of the record in this case, we conclude appellant has not demonstrated prejudice as a result of the trial court's partial compliance. As indicated under the facts, prior to entering his guilty plea, counsel for appellant related the basis for appellant's decision to withdraw his not guilty plea and to enter an *Alford* plea of guilty. Specifically, defense counsel noted he had explained to appellant, following voir dire, that there were "several members of the jury who had been victims of potential sexual abuse," including prospective "Juror No. 11," prospective "Juror No. 18," as well as at least one other individual "who had sexual assault in their past." Defense counsel noted the voir dire proceedings had given him "pause" and concern that the trial court "was not going to

get rid of them for cause," which would have required counsel to use "three of our peremptory challenges on just those individuals." Defense counsel further noted that he had explained "those things" to appellant, and the "potential risks * * * if he were to potentially lose at trial." (Tr. Vol. I at 7.) Following "those discussions," appellant informed counsel "he would like to resolve the case in this fashion." (Tr. Vol. I at 7-8.)

{¶ 23} Here, there is nothing in the record to suggest appellant's decision to change his plea was motivated by the fact he believed he would be subject to a three-year period of post-release control as opposed to a mandatory five-year period. Rather, as indicated above, appellant's counsel informed the trial court that appellant's decision to enter the *Alford* plea of guilty was based on concern that counsel would be required to use three peremptory challenges solely to strike prospective jurors who had revealed, during voir dire, past experiences with sexual abuse. Under such circumstances, appellant has not demonstrated prejudice as a result of the trial court's partial compliance with Crim.R. 11. *Lang* at ¶ 14. *See also State v. Mason,* 8th Dist. No. 104533, 2017-Ohio-7065, ¶ 44 (quoting with approval *Lang* and finding that, where there was no evidence in the record that "period of postrelease control 'was of particular concern or import to' " the appellant, trial court's misstatement that post-release term was for three years instead of five did not require court to vacate plea where no showing of prejudice); *State v. McMahon,* 12th Dist. No. CA2009-06-008, 2010-Ohio-2055, ¶ 27 (appellant failed to show he was prejudiced by "misinformation he received in regard to his postrelease control" where no indication post-release control was of particular concern in entering plea).

{¶ 24} Finally, as noted by the state, prior to the plea colloquy, appellant signed a plea form that contained the correct information regarding the term of post-release control (i.e., the form contains a check in a box indicating "Five Years - Mandatory" post-release control), and appellant acknowledged reviewing this form with counsel prior to entering the plea. Based on the record presented, appellant cannot establish prejudice necessary to invalidate his plea; rather, the trial court properly determined appellant knowingly and voluntarily entered his guilty plea. Accordingly, appellant's first assignment of error is not well-taken and is overruled.

{¶ 25} Under the second assignment of error, appellant argues the trial court erred in stating there was no presumption of community control and in sentencing him to an 11-

month term of incarceration.    Appellant cites the trial court's statement during the sentencing hearing that "there is no presumption one way or the other with respect to probation or prison."  (Tr. Vol. III at 6.)  According to appellant, there is a presumption of community control applicable to his convictions, but the presumption may be overridden by the factors set forth in R.C. 2929.13(B).

{¶ 26} In response, the state argues that the presumption in favor of community control for a fourth or fifth-degree felony was not applicable in this case because appellant was convicted of a sex offense under R.C. Chapter 2907.  We agree.

{¶ 27} R.C. 2929.13(B)(1)(a) states in part: "Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration."   Thus, R.C. 2929.13(B)(1)(a) "creates a presumption in favor of community control sanctions for crimes meeting certain criteria."  *State v. Coleman,* 8th Dist. No. 98557, 2013-Ohio-1658, ¶ 5, citing *State v. Lyles,* 8th Dist. No. 97524, 2012-Ohio-3362, ¶ 10.   However, "[t]he presumption of community control is subject to a number of exceptions contained in R.C. 2929.13(B)(1)(b)."  *State v. Hughes,* 12th Dist. No. CA2013-05-081, 2014-Ohio-1320, ¶ 12.

{¶ 28} One of those exceptions is set forth under R.C. 2929.13(B)(1)(b)(v), which states in part: "The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying  assault offense if * * * [t]he offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907. of the Revised Code."

{¶ 29} In the present case, appellant was convicted of a fifth-degree sex offense, i.e., attempted gross sexual imposition, a violation of R.C. Chapter 2907; specifically, R.C. 2907.05.  As such, the trial court had discretion to impose a prison term.  *See State v. Grey,* 7th Dist. No. 15 CO 0011, 2016-Ohio-3249, ¶ 15 (presumption of community control removed where appellant was convicted of two fifth-degree sex-offense felonies in violation of R.C. 2907.323 and 2907.07; "it was within the trial court's discretion to sentence him to a prison term on each of these offenses").  *See also State v. Myers,* 6th

Dist. No. OT-14-010, 2015-Ohio-916, ¶ 7 (where appellant was "convicted of a sex offense under Chapter 2907.322, * * * it was within the court's discretion to order a period of incarceration").

{¶ 30} Appellant also contends the trial court did not properly consider the principles and purposes of sentencing in imposing an 11-month sentence.  We disagree.

{¶ 31} R.C. 2953.08(G)(2) states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 32} In interpreting the above statutory provision, the Supreme Court of Ohio has held that "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges."  *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10.  Rather, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1.  Further, "[a]n appellate court will not find a sentence clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers,* 12th Dist. No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 33} In the present case, appellant's 11-month sentence was within the statutory range for a fifth-degree felony. The trial court's entry of conviction states that the court considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12, and further states the court weighed the factors set forth under R.C. 2929.13 and 2929.14. This court has previously held that "[s]uch language in the judgment entry belies a claim that the trial court failed to consider the purposes and principles of sentencing." *State v. Ganguly,* 10th Dist. No. 14AP-383, 2015-Ohio-845, ¶ 45. Further, during the sentencing hearing, the trial court stated it had "considered the principles and purposes of sentencing in your case, as well as all the relevant sentencing factors." Finally, in making its decision to impose an 11-month sentence, the trial court discussed the "serious" nature of the offense, and the "traumatic impact" it had on the victim. (Tr. Vol. III at 6.) The court also noted that "despite the fact that [appellant] had this case pending and [was] on a reporting bond, [he] incurred charges in two new cases." (Tr. Vol. III at 7.)

{¶ 34} On review, we find appellant's sentence is not clearly and convincingly contrary to law, and that the record supports appellant's sentence. Accordingly, appellant's second assignment of error is overruled.

{¶ 35} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

DORRIAN, J., concurs.
HORTON, J., concurs in judgment only.

_____